IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARYANNE L. COWART, PATRICK
COWART and SPENCER BARLOW, a
Minor by his mother and next friend,
MARYANNE L. COWART,

                OPINION and ORDER

      Plaintiffs,

                07-cv-410-bbc

    v.

CITY OF EAU CLAIRE, CITY OF EAU
CLAIRE POLICE DEPARTMENT, CITY
OF EAU CLAIRE ADMINISTRATIVE
REVIEW BOARD, JERRY MATYSIK,
TRAVIS QUELLA, BRADLEY VENAAS,
LISA ARLOSZYNSKI, NED DONNELLAN,
JENNIFER EBERT, JAMES FLORY,
DAVID OLSON, BRANDON BUCHANAN,
STEPHEN NICK, STEPHEN BOHRER and
LUCIE MCGEE,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Maryanne Cowart and Spencer Barlow (her son) assert that as a result of various ailments, it is necessary for Maryanne to have two service dogs available to assist her and for Spencer to have one dog available to assist him. Plaintiffs live in the City of Eau Claire, which has an ordinance prohibiting more than two dogs per household. Plaintiffs

1

requested a variance from the city to allow them to keep all three dogs in their home.  The city denied the request.  In response, plaintiffs filed this lawsuit, in which they allege that the city's refusal to grant them a variance violates the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, the Rehabilitation Act, 29 U.S.C. § 794, the Fair Housing Act, 42 U.S.C. §§ 3601-3631, the equal protection clause of the Fourteenth Amendment, their privacy rights under the Fourteenth Amendment and their rights to free speech and association under the First Amendment.

Now before the court are a host of motions.  Because plaintiffs have failed to adduce evidence to support any of their claims, defendants' motion for summary judgment will be granted.  Plaintiffs' motion to strike portions of defendants' answer to the amended complaint will be denied as untimely.  Plaintiffs' motion for judgment on the pleadings will be denied, as will their motion for sanctions.  Defendants' motion for sanctions and plaintiffs' motion to strike defendants' motion for sanctions will be denied as unnecessary. Because judgment will be entered for defendants and this case will not proceed to trial, plaintiffs' motion to "Expedite to Substitute Expert Witness" will be denied as well.

PLAINTIFFS' MOTIONS TO STRIKE PORTIONS OF DEFENDANTS' ANSWER,
FOR JUDGMENT ON THE PLEADINGS AND FOR SANCTIONS

I turn first to plaintiffs' motions to strike portions of defendants' answer to the

amended complaint, for judgment on the pleadings and for sanctions. Under Rule 12(f), a party may move to strike from any pleading statements that are "redundant, immaterial, impertinent, or scandalous" within 20 days after being served with the pleading if no response is required. Fed. R. Civ. P. 12(f)(2). Defendants filed their amended answer on January 7, 2008; plaintiffs filed the motion to strike on April 9, 2008. Therefore, it will be denied as untimely. (Plaintiffs make a last-ditch effort to argue that their timely filed motion to strike portions of defendants' original answer is still pending. This is a frivolous argument. Plaintiffs' amended complaint and defendants' amended answer are the operative pleadings in this case. The original complaint, answer and motion to strike portions of the answer became moot upon filing of the amended complaint.)

Plaintiffs' motion for judgment on the pleadings is difficult to follow. However, it is clear that it is contingent on success on their motion to strike portions of defendants' answer. Because I am denying the motion to strike, I must deny the motion for judgment on the pleadings as well. Finally, plaintiffs' motion for sanctions fails to conform to the requirements of Rule 11(c)(2). Even if it did, plaintiffs have not identified any misconduct by defendants that would merit sanctions and their motion will be denied.

MOTION FOR SUMMARY JUDGMENT

Before turning to the undisputed facts, a brief discussion about this court's summary

judgment fact-finding procedures and their application to this case is in order. In short, plaintiffs' failure to follow the procedures was staggering in its scope and fatal in its effect. This court follows very specific rules regarding fact-finding at summary judgment. The parties are informed of these rules at the outset in an attachment to the pretrial conference order. All litigants in this court, whether they are represented or proceeding pro se, are expected to read, understand and comply with these rules. One of the most important rules is that parties opposing a motion for summary judgment must propose all facts necessary to defeat the motion. <u>Procedures to be Followed on Motions for Summary Judgment</u>, II.B, II.D.4.

Plaintiffs have ignored this requirement. In addition to responding to the facts proposed by defendants, they submitted a mere ten facts of their own, none of which have anything to do with plaintiffs' alleged disabilities, their dogs' training as service dogs or the sort of accommodation plaintiffs require. Instead, in their brief in opposition to defendants' motion, plaintiffs direct the court to review "the documents Plaintiffs have provided in support of their Response to Defendants' Motion for Summary Judgment." Plts.' Br. in Opp., dkt. #96 at 37. Reviewing these documents is no small task. Among other things, they include Maryanne Cowart's Social Security Administration records, her medical records from several doctors for the years of 2004 through 2008 and Spencer Barlow's medical records, which also describe several years of treatment. This is precisely the sort of

4

evidentiary quagmire that the court's procedures are intended to avoid. There is no efficient way for defendants to respond to the myriad allegations presented in plaintiffs' brief and supporting documents. It is unreasonable for plaintiffs to expect the court to sort through reams of filings to identify critical nuggets of evidence. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record.). Accordingly, I have disregarded all facts not properly proposed and supported by admissible evidence. See, e.g., Chelios v. Heavener, 520 F.3d 678, 687 (7th Cir. 2008).

I find the following facts to be material and undisputed.

## A. Undisputed Facts

### 1. Parties

Plaintiff Maryanne Cowart lives in Eau Claire, Wisconsin, with her husband, plaintiff Patrick Cowart, and her son, plaintiff Spencer Barlow.

Defendant Jerry Matysik is the chief of police for defendant Eau Claire Police Department. At times relevant to this case, defendants Travis Quella and Lisa Arloszynski worked for defendant Eau Claire Police Department; Quella was a sergeant and Arlozynski was an officer.

Defendant Eau Claire Administrative Review Board is an entity created by city ordinance to hear appeals from citizens who have been affected adversely by administrative

decisions made by officials, agents and employees of the City of Eau Claire.

Defendant Stephen Nick is the Eau Claire city attorney. Defendants Stephen Bohrer and Lucie McGee are assistant city attorneys. McGee provides legal advice to the Administrative Review Board.

2. <u>Legal matters regarding plaintiffs' dogs</u>

In 2001, Maryanne Cowart was charged with Felony Mistreatment of an Animal, along with several other felonies. She entered into a plea agreement regarding two other felonies, and the charge of Felony Mistreatment of an Animal was "read-in" at sentencing.

Between March 2003 and May 2006, the police received and investigated four complaints regarding Maryanne's neglect or mistreatment of her dogs. When the police visited her home on March 23, 2003, they observed two unlicensed dogs and instructed plaintiff to get the dogs licensed.

On December 7, 2006, an Eau Claire police officer went to plaintiffs' home to investigate an anonymous, written complaint regarding animal neglect. When the officer arrived, she saw three adult cocker spaniels, one male and two females, as well as a litter of six puppies. The officer was concerned for the well-being of the dogs and recommended that an animal control officer conduct a follow-up investigation.

On December 13, 2006, defendant Arloszynski went to plaintiffs' house to

investigate. She observed that none of the dogs were licensed and that the concrete floor of the dog pen was covered with organic material. (The parties dispute the nature of the organic material.) Defendant Arloszynski issued three citations as a result of this visit: (1) failure to license three adult dogs; (2) keeping more than two adult dogs at the residence; and (3) failure to promptly remove and dispose of animal excreta.

3. Variance request

In response to the citation for keeping more than two adult dogs at the residence, Maryanne Cowart requested a variance from the police department to allow her to keep more than two dogs. On January 11, 2007, she met with defendant Bohrer. At that meeting, she described the dogs as "service dogs."

On January 29, 2007, the police department denied Cowart's request for a variance. The stated reason for the denial was "the number of past (police) contacts at your residence regarding your dogs, neighbor concerns reference (sic) past care of animals, (and) a review of past ECPD reports which highlight past problems documented by officers." On January 30, 2007, defendant Arlozsynski and two other animal control officers surrounded Cowart when she visited City Hall.

On February 20, 2007, Cowart filed a discrimination complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development. In the complaint,

Cowart alleged that her dogs were service dogs. Ultimately, that complaint was dismissed.

On February 24, 2007, Cowart appealed the police department's denial of her variance request. In her appeal, she alleged that the dogs were service dogs. A hearing before the Administrative Review Board was scheduled initially for March 28, 2007. At that hearing, Cowart had the burden of proof to show that the police department's decision to deny her variance request should be reversed.

The hearing was rescheduled for April 25, 2007, because Cowart had recently hired an attorney. In support of her variance request, plaintiff submitted letters from physicians in support of her use of "psychiatric service dogs." The hearing was then postponed until May 16, after plaintiff's attorney asked that it be held in closed session. At the request of defendant Review Board, defendant McGee drafted a legal opinion regarding whether the board could legally hold the hearing in a closed session under Wisconsin's open meetings law. Defendant McGee concluded that it would not be lawful to hold a closed hearing.

On May 10, 2007, plaintiff's attorney wrote a letter to the city, in which he asked again that the hearing take place in closed session. That day, a notice was issued for the Review Board's hearing on May 16. In spite of defendant McGee's opinion, the notice indicated that Cowart's variance request was on the agenda for the hearing and that the hearing might go into closed session when her request was considered. The fact that the meeting might go into closed session was not communicated expressly to either Cowart or

8

her lawyer.

On May 16, 2007, the Review Board held its hearing. Neither the plaintiffs nor their attorney attended. At the hearing, defendant Venaas presented the police department's case, including Cowart's history of animal cruelty, the history of dog-related complaints and her use of the dogs in a commercial breeding operation. The Review Board voted unanimously to deny plaintiff's appeal.

In June 2007, police officers responded twice to complaints regarding plaintiffs' dogs. On June 13, Cowart called the police department to report harassment by her neighbors and defendant Arlosynski. On July 20, 2007, two police officers delivered a letter from defendant Venaas to plaintiffs' home. In the letter, Venaas insisted that plaintiffs comply with the ordinance.

## B. Opinion

As noted above, plaintiffs contend that defendants violated their statutory and constitutional rights in a myriad of ways. Because these claims are repetitive and fall into several broad categories, I will consider them as groups.

### 1. Disability-related claims

Plaintiffs Maryanne Cowart and Spencer Barlow contend that defendants violated

9

their rights under the Americans with Disabilities Act and the Rehabilitation Act of 1973 in several ways. First, they contend that the Administrative Review Board's "refusal" to hold its hearing regarding Cowart's request for a variance in closed session constituted a failure to provide her (and plaintiff Spencer Barlow) a reasonable accommodation for their disabilities. Next, they contend that the City's refusal to grant their variance request to allow them to keep a third dog constituted a failure to accommodate their disabilities. Finally, they contend that the defendants retaliated against Cowart by threatening to enforce the licensing rules and by surveilling her home.

Both the Americans with Disabilities Act and the Rehabilitation Act prohibit discrimination against qualified persons with disabilities. Title II of the Americans with Disabilities Act is concerned with public entities, which are prohibited from excluding qualified persons with disabilities from participation in or receiving the benefits of the services, programs or activities offered by the entity and from discriminating against qualified disabled persons. 42 U.S.C. § 12132. The Rehabilitation Act prohibits organizations that receive federal funds from discriminating on the basis of disability. Community Services v. City of Milwaukee, 465 F.3d 737.

The protections of both the Americans with Disabilities Act and the Rehabilitation Act may be invoked only by a person who is a "qualified individual with a disability." In the context of these statutes, the term means

10

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131. The Rehabilitation Act provides that the ADA standards are to be applied to determine whether the Rehabilitation Act has been violated. 29 U.S.C. § 794(d). Therefore, I will consider them together.

A person is disabled within the meaning of the Americans with Disabilities Act if she suffers from a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(I) (1998). A major life activity is "substantially limited" when the person is unable to perform it or is significantly restricted in the manner, condition or duration in which she can perform it in comparison to the general population. Kampmier v. Emeritus Corp., 472 F.3d 930, 938 (7th Cir. 2007), citing 29 C.F.R. § 1630.2(j).

To avoid summary judgment, plaintiffs were required to "demonstrate that there is at least a genuine issue of material fact as to whether [they are] disabled." Squibb v. Memorial Medical Center, 497 F.3d 775, 780 (7th Cir. 2007); Contreras v. Suncast Corp., 237 F.3d 756, 763 (7th Cir. 2001) (stating that it is plaintiff's burden on summary judgment to demonstrate he can "come up with evidence to show he could meet his ultimate

burden of showing [a] . . . recognized disability").

As discussed above, plaintiffs proposed no facts having anything to do with their alleged disabilities, either in support of their opposition or in response to defendants' proposed findings of fact. Because plaintiffs have failed to adduce any information to support their allegation regarding this crucial, threshold question, defendants' motion for summary judgment will be granted.

Even if plaintiffs could show that they were disabled and entitled to protection, there is no indication that defendants failed to provide them a reasonable accommodation. First, there is no evidence that plaintiffs' dogs were trained as service dogs. Moreover, Maryanne Cowart had a long record of complaints against her regarding her care of her animals (and she pleaded guilty to a crime involving animal cruelty). This was the only information before the board when it denied Cowarts' variance request. She was not present to present any information regarding her need for a variance, even after the board agreed to hold a closed session to avoid public disclosure of private information. It was not unreasonable for the board to deny plaintiff's request to keep more dogs than the ordinance allowed when it had before it information about her long history of questionable care of animals and no countervailing evidence regarding her need for a service dog.

Finally, plaintiffs appear to assert that their Americans with Disabilities Act and Rehabilitation Act claims are actionable under § 1983 as well as the statutes themselves. I

12

need not consider that question in this case, because I have concluded that plaintiffs have failed to adduce any evidence that defendants violated either the Americans with Disabilities Act or the Rehabilitation Act.

2. Fair Housing Act

The Fair Housing Act makes it unlawful "to make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . . ." 42 U.S.C. § 3604(f). Therefore, communities must make reasonable accommodation to zoning rules when necessary to afford a handicapped person the "equal opportunity" to obtain housing. Wisconsin Community Services v. City of Milwaukee, 465 F.3d 737, 746 (7th Cir. 2006). The Act applies only to accommodations that are "necessary," meaning that, without the accommodation the plaintiff will be denied the ability to obtain housing of her choice. Id. Plaintiffs' claim fails because they have not adduced evidence regarding their alleged handicaps. In addition, they have not shown that a variance to the city ordinance prohibiting a third dog denies them the ability to obtain housing.

3. Constitutional claims

In their complaint, plaintiffs identify a plethora of alleged constitutional violations stemming from their variance dispute with the city. Defendants moved for summary

13

judgment with respect to all of plaintiffs' claims; plaintiffs responded with respect to some of these claims, but not all. Specifically, plaintiffs did not respond to the motion with respect to their claims that defendants violated their First Amendment rights to free speech and association. Plaintiffs' failure to offer any opposition to these arguments constitutes a waiver. Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (failure to oppose argument permits inference of acquiescence and "acquiescence operates as a waiver") (internal citations omitted).

Next, plaintiffs allege that the city violated their rights under the equal protection clause of the Fourteenth Amendment when it denied their variance request. In their complaint, plaintiffs contend that they were denied a variance as a result of discrimination based on race and disability (plaintiffs allege in their complaint that Patrick Cowart and Spencer Barlow are African-American and that plaintiffs Maryanne Cowart and Spencer Barlow suffer from numerous physical and psychological maladies).

The equal protection clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Actions or rules that allegedly violate the equal protection clause are subject to varying levels of judicial scrutiny. The proper level of scrutiny for a claim that does not involve a fundamental right and involves no suspect class is the rational relationship test. Discovery House, Inc. v. Consolidated City of Indianapolis, 319 F.3d 277, 282 (7th Cir. 2003).

Claims involving discrimination based on disability fall in this category; a governmental entity may treat the disabled and non-disabled differently so long as there is a rational relationship between the treatment and a legitimate governmental purpose. City of Cleburne, 473 U.S. at 446. Regulations that discriminate based on race must withstand strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. E.g., Grutter v. Bollinger, 539 U.S. 306, 326-27 (2003). But whatever level of scrutiny applies here, no reasonable jury could conclude that either Patrick Cowart and Spencer Barlow's race, or Maryanne Cowart and Spencer Barlow's disabilities had anything to do with the City's denial of their request for a variance. Plaintiffs have adduced no evidence that defendants have granted variances to other residents who are of another race or who are not disabled. In contrast, there is ample evidence that the Board's primary concern when denying the variance were the repeated police calls regarding plaintiffs' care of their animals.

Finally, plaintiffs contend that their Fourteenth Amendment rights to privacy were violated because they would have had to discuss publicly their medical conditions in order to persuade the Administrative Review Board to grant them a variance. This is a frivolous argument. Plaintiffs' privacy rights cannot possibly have been violated by being forced to disclose private, medical matters in public because Maryanne refused to attend, much less speak at, the hearing at which her variance request was considered. Moreover, the city *agreed*

15

to hold any sensitive portions of that hearing in closed session. It does not matter whether the city conveyed this information to plaintiffs or their attorney directly and individually; as required by Wisconsin law, the public notice for the meeting, which was released six days in advance of the meeting, stated that this portion of the hearing might go into closed session.

## MOTION FOR SANCTIONS

Finally, defendants have moved for dismissal of plaintiffs' case as a sanction for alleged discovery misconduct, dkt. #112. Rather than responding directly, plaintiffs filed a motion to strike the motion, dkt. #133. Defendants' allegations are serious: they assert that plaintiffs encouraged and pressured third parties to sign affidavits that plaintiffs knew contained false information. However, because plaintiffs' case will be dismissed in its entirety on substantive grounds, I need not consider whether it could be dismissed as a sanction for discovery violations as well, or whether defendants' motion was presented properly. Therefore, defendants' motion for sanctions will be denied as unnecessary, as will plaintiffs' motion to strike defendants' motion for sanctions.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment of defendants City of Eau Claire, City of Eau Claire Police Department, City of Eau Claire Administrative Review Board, Jerry Matysik, Travis Quella, Bradley Venaas, Lisa Arlozynski, Ned Donnellan, Jennifer Ebert, James Flory, David Olson, Brandon Buchanan, Stephen Nick, Stephen Bohrer and Lucie McGee, dkt. #31, is GRANTED.

2. The motion for judgment on the pleadings of plaintiffs Maryanne Cowart, Patrick Cowart and Spencer Barlow, dkt. #48, is DENIED.

3. Plaintiffs' motion to strike portions of defendants' answer to the amended complaint, dkt. #49, is DENIED.

4. Plaintiffs' motion for sanctions, dkt. #50, is DENIED.

5. Defendants' motion for sanctions, dkt. #112, and plaintiffs' motion for sanctions, dkt. #133, are DENIED as unnecessary.

6. Plaintiffs' motion to "Expedite to Substitute Expert Witness," dkt. #146, is DENIED.

7. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 16th day of July, 2008.

>BY THE COURT:
>/s/
>BARBARA B. CRABB
>District Judge